**Kenneth R. JONES, et al.**

v.

**Kenneth CARRIER, et al.**

Supreme Judicial Court of Maine.

Argued Nov. 15, 1983.

Decided April 2, 1984.

Hyde, Day & Ferris, William Thomas Hyde (orally), Skowhegan, for plaintiff.

Gross, Minsky, Mogul & Singal, George C. Schelling (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

In an action to quiet title and for reformation of a deed, plaintiffs Kenneth and Kathleen Jones appeal from a decision of the Superior Court (Piscataquis County) granting judgment for the defendants, Kenneth and Sandra Carrier. The parties to this suit lay claim to a disputed parcel of land through separate chains of title. On appeal, the Joneses contend that the court below erred in denying them the remedy of reformation of an earlier deed in the de-

fendants' chain of title. We affirm the judgment.

The disputed parcel is a triangular, sixteen acre tract of woodland lying north of the Shaw Road in Dover-Foxcroft. The parcel lies adjacent to land owned by the Joneses. The Carriers are record owners of land lying south of the Shaw Road, which, together with the disputed tract, comprise what was once called the "Lizzie Bush Farm." All three parcels were originally owned by one Merle Crocker. The land south of the Shaw Road came into the Carriers' hands by a chain of title running from Crocker to Thomas to Squires to Carrier. The land north of the Shaw Road and adjacent to the disputed tract passed from Crocker to Gray to Blake to Jones. Although the original deed to Thomas, and all subsequent deeds in that chain by reference, make the Carriers the record owners of the disputed tract, it is clear that Crocker never intended to convey the disputed tract to Thomas. Instead, he meant to convey that parcel, along with the adjacent property north of the Shaw Road, in a subsequent deed to Gray. Both the Joneses and Carriers assert ownership over the parcel.

The deed from Crocker to Thomas, recorded January 20, 1969, conveyed "certain real estate . . . known as the Lizzie Bush farm" to Clyde and Carolyn Thomas. The Thomases, using the same descriptive language, conveyed it to Maxim Squires, who sold it to the Carriers. The deed from Crocker to Gray, recorded November 28, 1969, was intended to convey all the land north of the Shaw Road including that portion of the Lizzie Bush Farm now under dispute. In testimony before the court, Crocker indicated that he had been unaware that the Lizzie Bush Farm extended north of the Shaw Road. He had intended to convey his land north of the Shaw Road

to Gray and his land south of the Shaw Road to Thomas. Squires testified that he had "no reason to believe" that the land he purchased from Thomas included the disputed parcel. Kenneth Carrier testified that he was unaware of his record ownership of the parcel until he received a call from Jones requesting that he sign a quitclaim deed in order to remove a cloud from Jones' title to the tract. He also testified that he had no notice of any problem when he bought the land from Squires, although he understood that he was purchasing an aggregate of 140 acres. The sixteen acre disputed tract, when added to the 124 acre parcel lying south of the Shaw Road, yields 140 acres.

While both the Crocker-Thomas deed and the Crocker-Gray deed purport to convey the disputed tract, it is unquestioned that the former deed, being recorded first, serves to make the Carriers record owners of the tract. See 33 M.R.S.A. § 201 (priority of recording). In their complaint, the Joneses sought to reform the deed between Crocker and Thomas so as to carve out the disputed parcel. The court, in finding for the defendants, adhered to the general rule that litigants seeking to reform a deed must have been parties to that deed, and that a mistake not apparent on the face of the deed will not flow through to subsequent innocent purchasers for value. The Joneses contend that the court erred in so ruling. Citing a 1948 Ohio case,[1] the Joneses contend that a latent defect may flow through to subsequent bona fide purchasers and urge that their situation provides an exception to the general rule. We conclude that the court was correct in its application of the law of reformation to these facts, and find no error in its ruling.

■■■ A deed to convey real property is evidence of a contract, and is interpreted

---

1. *Hartman v. Tillett,* 86 Ohio App. 20, 89 N.E.2d 613 (1948). A careful reading of this case, however, suggests that plaintiffs' reliance upon it is unfounded. The *Hartman* court did not dispute the general rule that subsequent innocent purchasers for value are insulated from hidden mistakes in a deed. Instead, it merely noted that the defendant lacked the requisite characteristics of a bona fide purchaser, and granted reformation. 86 Ohio App. at 23, 89 N.E.2d at 615.

according to the intent of the parties. *Edmonds v. Becker*, 434 A.2d 1012, 1013 (Me. 1981); *Sargent v. Coolidge*, 399 A.2d 1333, 1344 (Me.1979). Where the language of a deed is unambiguous, it will guide interpretation of the parties' intent. *Badger v. Hill*, 404 A.2d 222, 225 (Me.1979); *Gillespie v. Worcester*, 322 A.2d 93, 95 (Me.1974). If, however, both the grantor and the grantee labor under a mutual mistake of fact, either party may bring an action to reform the deed. *Blue Rock Industries v. Raymond International, Inc.*, 325 A.2d 66, 77 n. 7 (Me.1974); *see also* 13 S. Williston, *A Treatise on the Law of Contracts* § 1549A (discussing deed reformation).

 In order to protect innocent purchasers and to ensure the free alienability of land, this Court has long held that a party seeking to reform a deed assumes a heavy burden. *Horner v. Flynn*, 334 A.2d 194, 198 (Me.1975); *Tucker v. Madden*, 44 Me. 206, 215 (1857). He must show that the mistake was mutual, *Blue Rock Industries*, 325 A.2d at 77 n. 7; *Andrews v. Andrews*, 81 Me. 337, 339, 17 A. 166 (1889), and must do so by convincing evidence, *Day v. McEwen*, 385 A.2d 790, 794 (Me.1978). As a general rule, however, in order to have standing to bring such an action, the plaintiff must have been a party or privy to the original deed. *Sargent v. Coolidge*, 433 A.2d 738, 741 (Me.1981); *Adams v. Stevens*, 49 Me. 362, 365 (1861). This rule will abate only in the face of a subsequent purchaser having notice of the defect. *Perron v. Lebel*, 256 A.2d 663, 665 (Me.1969); *Adams*, 49 Me. at 365.

■ The original deed from Crocker to Thomas is clear in its conveyance of the entire Lizzie Bush Farm. Assuming, *arguendo*, that there was a mutual mistake by both Crocker and Thomas, it is not apparent from the face of the deed, and would not have been discoverable even with the most diligent of Registry examinations. Neither the Carriers, as evidenced by their testimony, nor Mr. Squires was aware of any defect in the description of the conveyance. Without such awareness, the Carriers are entitled to protection as bona fide purchasers for value without notice. *Sargent*, 433 A.2d at 741. We conclude, with the court below, that "a mistake in a deed not apparent on its face" should not, under these facts, be subject to reformation "by others not privy to the mistake."

The entry is:

Judgment affirmed.

All concurring.